IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ONE FOSSILIZED TYRANNOSAURUS BATAAR SKULL,<br><br>    Defendant Property. | NO. 7:17-CV-106 |

## VERIFIED COMPLAINT FOR FORFEITURE

The United States of America files this complaint *in rem* against the defendant property, alleging the following pursuant to Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Federal Rules of Civil Procedure):

### I.  JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction of this cause of action in rem by virtue of the provisions of 28 U.S.C. §§ 1345 and 1355(a).  Venue is proper under 28 U.S.C. § 1355(b)(1) because acts giving rise to the forfeiture occurred in this district.

2.  The statutory basis for this suit is 19 U.S.C. § 1595a(c).  Also applicable are 28 U.S.C. §§ 2461 and 2465 and Supplemental Rule G.

### II.  NOTICE AND POTENTIAL CLAIMANTS

3.  The defendant property, One Fossilized Tyrannosaurus Bataar Skull ("Bataar Skull") was seized on July 23, 2013, from the home of James Godwin, located at

15422 FM 1954, Wichita Falls, Texas.  Defendant Bataar Skull is currently being held in storage at the Museum of the Rockies in Bozeman, Montana, pursuant to an agreement with United States Customs and Border Protection ("CBP").

4. The name and last known addresses of the only individual reasonably appearing to the government at this time to be a potential claimant to the defendant property are:

> James Godwin
> c/o Michael Villa, Jr.
> Meadows Collier Attorneys at Law
> 901 Main Street, Suite 3700
> Dallas, Texas 75202
>
> James Godwin
> 15422 FM 1954
> Wichita Falls, Texas 76308

Notice of this Complaint will be provided to the above-listed individuals.

### III.   FACTUAL BASIS FOR FORFEITURE

<u>Bataar Fossils and Mongolian Law Regarding Antiquities</u>

5. The Gobi Desert, located in Mongolia, is a fertile fossil field of dinosaur relics, including those of Tyrannosaurus (Tarbosaurus) Bataars, a relative of the more commonly known Tyrannosaurus Rex, and of the Gallimimus, a somewhat ostrich-like creature.  The Bataar, a native of present-day Mongolia, was a dinosaur from the late Cretaceous period, approximately 70 million years ago.  Bataar fossils were first discovered in 1946 during a joint Soviet-Mongolian expedition to the Gobi Desert in the Mongolian Ömnögovi Province.  They have only ever been recovered from a small area in the Gobi Desert known as the Nemegt Basin in Mongolia.  Due to the specific soil

composition of the Nemegt Formation, Bataar fossils uncovered from that Formation have a particularized coloring.

## Mongolian Constitution

6. Mongolian constitutional, statutory, and regulatory law relating to items of cultural significance was codified in 1924 and has, since 1924, continuously prohibited the personal or non-state ownership of items of cultural significance, such as the defendant property.

7. Article 3, Section 1 of the First Mongolian Constitution, enacted in 1924 states:

> [b]ecause/since all lands and resources within their subsoil, forests, water and the natural resources within them, as well as the culture and characteristics of Mongolia which have been in possession of the people since ancient times do meet the customs of the present state and its people, all assets and resources mentioned above shall be under the possession of the people, thus making private property of them prohibited.

8. In 1940, the Mongolia government enacted the 1940 People's Republic of Mongolia Constitution. Article 5 of the 1940 People's Republic of Mongolia Constitution restated the same principle contained within Article 3, Section 1 of the 1924 People's Republic of Mongolia Constitution, that being "all lands and resources within them and their subsoil . . . and the resources within them . . . are the property of the state, in other words, the asset of the people."

9. Article 10 of the 1960 People's Republic of Mongolia Constitution, once again restated the same principles contained within Article 3, Section 1 of the 1924 Constitution and Article 5 of the 1940 Constitution, again that being that "all lands and resources within them and their subsoil . . . and the resources within them . . . are the

property of the state, in other words, the asset of the people."

10. In 1992, the Mongolian government adopted its current constitution, which likewise embraces that principal. Specifically, Article 7 of the current Mongolian constitution provides that "Historical, cultural, scientific and intellectual heritages of the Mongolian People shall be under State protection."

### Mongolian Rules to Protect the Antiquities

11. Since at least 1924, Mongolian Law has characterized dinosaur fossils as property of the Government of Mongolia.

12. Article One of the 1924 Mongolian Rules to Protect the Antiquities states that "all antique items and relics of the past found within the territory of Mongolia shall be owned by Mongolia." "Antiques and relics" are further defined in Article Two, Section Five of the 1924 Mongolian Rules to Protect the Antiquities as "[p]aleonthological items such as remnants of ancient plants and animals as well as archeological findings that ought to be preserved in museums."

13. Article 9 of the 1924 Mongolian Rules to Protect the Antiquities further provides "one-of-the-kind rare items are prohibited to be transported abroad." A violation of Article 9 is punishable by a criminal penalty pursuant to Article 11 of 1924 Mongolian Rules to Protect the Antiquities.

### Mongolian Law on Cultural Heritage

14. Pursuant to Article 3.1.8 of the Mongolian Law on Cultural Heritage fossils and animal imprints are defined as "historical and cultural valuable objects."

15. Article 13.1 of the 2001 Mongolian Law on Cultural Heritage specifically

provides that "[t]he territory and land bowels where historically, culturally and scientifically significant objects exist shall be under state protection and any such findings shall be a state property."

16. Furthermore, Article 13.2 of the Law on Cultural Heritage provides that any discoveries of culturally and scientifically significant objects must be registered with the local and national governments of Mongolia within one year of their discovery.

17. In addition, Article 16.3 of the Law on Cultural Heritage provides that "[i]t is prohibited to transfer the ownership rights of the exclusively valuable historical and cultural valuable object to foreign citizen or stateless person through selling, presenting and inheriting.

18. Lastly, Article 20.4 of the Law on Cultural Heritage mandates that in situations where "historical and cultural[ly] valuable objects are illegally sent abroad [outside of Mongolia] or the object allowed to . . . cross[] the national [Mongolian] border" the Government of Mongolia must take all steps necessary to ensure the return of the object to Mongolia.

## Criminal Law of Mongolia

19. Mongolian Law has further protected the Mongolian Government's ownership interest in dinosaur fossils since as early as 1924 by criminalizing the illegal smuggling of such objects out of Mongolia.

20. In 1926, Chapter 15, Article 114 of the Criminal Law of the People's Republic of Mongolia was enacted. That Article provides that "[v]iolators of rules to guard and protect antiquities and relics preserved since ancient times and/or representing

them, shall be sentenced up to one year in jail."

21.     Furthermore, in 1929, the Mongolian Government enacted two laws which provided specific penalties for violations of restrictions on state-owned property. More specifically, Chapter 2, Article 63 of the Criminal Law of the People's Republic of Mongolia provides "[t]hieving, embezzling, and misappropriating in any other forms of state and public property shall be sentenced up to seven years in prison." Additionally, Chapter 14, Article 118 of the Criminal Law of the People's Republic of Mongolia provides that "[v]iolators of rules to guard and protect antiquities preserved since ancient times . . . shall be sentenced to pay up to 600 tugrugs."

22.     In 1986, the Government of Mongolia again enacted criminal laws that established penalties for the illegal export of dinosaur fossils. Specifically, Article 172.2 of the Criminal Code of Mongolia provided that "illegal transportation of . . . rare ancient animals, plants, valuable items of the museum, historically and archeologically significant items, through the Mongolian border shall be penalized by confiscation of the items, and imprisonment of up to five years in prison or be fined the amount between 100,000 tugrugs and 500,000 tugrugs."

23.     Recently, in 2008, the Mongolia Government amended Article 175 of the Criminal Code of Mongolia to read that:

> illegal transportation through the state border restricted goods, rare animals, minerals and natural elements shall be punishable by either confiscation of property or a fine equal to 51 to 150 times the amount of minimum salary or 251 to 500 hours of forced labor or incarceration for a term of 3 to 6 months.

24.     Article 175.2 of the 2002 Criminal Code of the Law of Mongolia, which

**Complaint for Forfeiture - Page 6**

specifies the criminal penalty imposed for violations of the anti-smuggling laws, provides that:

> in case historical or cultural valuable objects, museum exhibits, unique, rare and valuable findings of ancient animals and plants, archeological and paleontological findings and artifacts are smuggled through the national border, the assets shall be seized and the [persons] shall be imposed a fine . . . or imprisoned for two to five years.

### Mongolian Court Decision

25. The Mongolian Supreme Court issued an interpretation decree, number 24, 2003, stating that the smuggling of any properties listed in the Law on Cultural Heritage shall be a crime regardless of the number, size, and monetary value of the item.

### Investigation of Bataar Skulls Connected to Rick Rolater and By Nature Gallery

26. On or about June 11, 2012, the United States Immigration and Customs Enforcement, Homeland Security Investigations (HSI) Resident Agent Office in Casper, Wyoming, received information via a "Tip Line" report regarding a fossilized Bataar skull that was being offered for sale at the By Nature retail store in Jackson, Wyoming.

27. The Source of Information (SOI) had seen the Bataar skull in the By Nature retail store sometime in September of 2010, next to a placard stating that the fossil was a Tyrannosaurus Bataar, which existed during the late Cretaceous era, 67 million years ago, and was recovered from the Nemegt Basin in the Gobi Desert, Mongolia, Central Asia. The fossil was being offered for sale, priced at $320,000.

28. The SOI then spoke with a By Nature clerk at the Jackson, Wyoming store, who confirmed that the Bataar skull was in fact a Tarbosaurus bataar, that it had been excavated in Mongolia in the 1980s, and that the excavator was a person with private

**Complaint for Forfeiture - Page 7**

property rights, which allows that person to legally acquire fossils from their own property.

29.     The SOI had previously lived and worked in Mongolia, and possessed first-hand knowledge of Mongolian law regarding private property rights.  The SOI informed the clerk that there were no private property rights in Mongolia until the year 2001.  The store clerk then told the SOI, "Well, I guess that goes to show that if you pay the right people," but then stopped himself and said, "I mean, is that right or wrong?  Who can say?"

30.     On or about June 19, 2012, HSI Special Agent James Hasskamp, acting in an undercover capacity, spoke with a clerk at the By Nature retail store in Jackson, Wyoming, who was later identified as Kelly Bradstreet.  Bradstreet informed the undercover agent that the fossilized Bataar skull was approximately 60% complete, that the skull was recovered from the Gobi Desert in Mongolia, and that it was recovered from private land in Mongolia in the 1980s.

31.     On or about June 26, 2012, HSI agents attempted to execute a federal seizure warrant for the fossilized Bataar skull that had been on display at the By Nature retail store in Jackson, Wyoming.  At that time, Kelly Bradstreet told the agents that the Bataar skull had been pulled from display after the publicized New York seizure of another Bataar, to avoid potential problems, and that it was stored at the house she and her husband lived in, which was owned by the store's co-owner, John Richard ("Rick") Rolater.

32.     When asked about company documents, including sales records,

importation records, and other business records, Kelly Bradstreet stated that those records were kept on a computerized system, and that Rolater maintained his computers at the "home office." Research revealed this to be the Rolater residence in Colorado, located at 341 Harrier Circle, Eagle, Colorado.

33. Agents later went to the Bradstreet residence, located at 1208 Melody Creek Lane, Jackson, Wyoming, to speak with Kelly Bradstreet's husband, Douglas Bradstreet, who was employed as the By Nature store's Gallery Director. Douglas Bradstreet told agents that the Bataar fossil subject to seizure was stored in a closet within the residence, and that Rick Rolater had directed Bradstreet to remove the Bataar from the By Nature store after they both saw news media reports regarding the seizure of a Bataar fossil in New York. Bradstreet told the agents that Rick Rolater had told him the removal of the Bataar from the store was meant to avoid any potential problems.

34. Both Kelly and Douglas Bradstreet stated that Rolater provided them with the back-story about private party interests in Mongolia, should anyone ask them about the Bataar fossils for sale in the gallery.

35. HSI seized that fossilized Bataar skull from the Bradstreet residence pursuant to a seizure warrant and referred the matter to CBP for administrative forfeiture proceedings. On December 12, 2012, CBP administratively forfeited the Bataar as illegally imported pursuant to 19 U.S.C. §§ 1595(a)(c), 2606, and 2609.

36. On June 26, 2012, HSI agents interviewed Rick Rolater at his Eagle, Colorado residence. Rolater told the agents that he had two By Nature retail stores,

one in Jackson, Wyoming, and the other one in Eagle, Colorado. He further stated that his stores had sold five or six Bataar skulls in the past six years, and that he did not currently possess any additional Bataar fossils, other than the one seized in Jackson, Wyoming.  However, Rolater's attorney subsequently told HSI Special Agent Hasskamp that Rick Rolater possessed another Bataar skull at his house in Eagle, Colorado.

37.	Based in part on the facts described above, HSI obtained a District of Colorado federal search warrant for the residence of Rick Rolater, 341 Harrier Circle, in Eagle, Colorado, and a federal Seizure Warrant for another Bataar Skull, believed to be at the residence.  Upon execution of the warrants on August 1, 2012, HSI agents located the Bataar Skull, which was found hidden in the crawl space of the residence.  Officers also located a Gallimimus Foot in the garage; it had a price tag on it which indicated that it also came from Mongolia.  The Bataar Skull and Gallimimus Foot were seized as illegally imported.

38.	Rolater was charged in District of Wyoming Case No. 13-CR-299-S with conspiracy to smuggle fossils into the United States; on January 2, 2014, he pled guilty to a violation of 18 U.S.C. §§ 371 and 545.

39.	The United States obtained a default judgment of forfeiture in the District of Colorado, Case No. 14-cv-00043-WYD-MJW, for the Bataar Skull and Gallimimus Foot fossils seized from the Rolater residence in Eagle, Colorado.

Discovery and Seizure of Defendant Bataar Skull

40. On August 1, 2012, Rick Rolater told Special Agent Hasskamp that he and his spouse, Francis Rolater, owned a 66.6% interest in By Nature Gallery, Inc., and that Dr. James W. Godwin of Wichita Falls, Texas owned a 33.3% interest in By Nature Gallery, Inc.

41. Rolater also told Special Agent Hasskamp on August 1, 2012 that he purchased, through By Nature Gallery, Inc., the defendant Bataar Skull from Brock Sisson, owner of Vertebrata Reproductions LLC, on or about January 12, 2012. The purchase price for the defendant Bataar Skull was $190,000, paid in installments, with the final payment of $47,500 occurring on May 14, 2012.

42. Rolater informed Special Agent Hasskamp that the defendant Bataar Skull purchased from Sisson was transferred to Godwin on an unknown date in May 2012. Information provided by Rolater, and from documents seized from Rolater, indicate that the transfer of the defendant fossil to Godwin occurred in a "pass-through"-type transaction, where there was not a conventional retail sale. Instead, it was merely a transfer to a co-owner of By Nature Gallery, Inc.

43. On July 12, 2013, HSI agents obtained a seizure warrant from the District of Wyoming, Case No. 13-mj-119, providing for the seizure of defendant Bataar Skull at the residence of James Godwin, 15422 FM 1953, Wichita Falls, Texas.

44. On July 23, 2013, HSI agents interviewed Godwin prior to execution of the seizure warrant. Upon questioning, Godwin admitted that he possessed a Mongolian Bataar Skull fossil that was approximately 50 percent complete. Godwin stated that he

obtained the Bataar Skull from Rolater approximately three or four years ago.

45. Later on July 23, 2013, HSI agents executed the seizure warrant at Godwin's residence and recovered the defendant Bataar Skull.

46. The facts set forth above are not all of the facts known to the United States, but are sufficient to establish probable cause to believe that the defendant property is subject to forfeiture pursuant to 19 U.S.C. § 1595a.

## FIRST CLAIM FOR RELIEF

47. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

48. 19 U.S.C. § 1595a(c)(1)(A) provides that "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows . . . The merchandise shall be seized and forfeited if it . . . is stolen[.]"

49. Defendant Bataar Skull is a genuine Bataar fossil discovered in Mongolia at some time in 1946 or later.

50. Defendant Bataar Skull was introduced into the United States at some point after its discovery in Mongolia.

51. Defendant Bataar Skull was stolen under Mongolian law at the time of its introduction into the United States.

52. Introduction of the defendant Bataar Skull into the United States was contrary to law because it violated the Lacey Act, currently codified at 16 U.S.C. § 3371, et seq.  16 U.S.C. § 3372(a) states "[i]t is unlawful for any person . . . (2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce--

obtained the Bataar Skull from Rolater approximately three or four years ago.

45. Later on July 23, 2013, HSI agents executed the seizure warrant at Godwin's residence and recovered the defendant Bataar Skull.

46. The facts set forth above are not all of the facts known to the United States, but are sufficient to establish probable cause to believe that the defendant property is subject to forfeiture pursuant to 19 U.S.C. § 1595a.

## FIRST CLAIM FOR RELIEF

47. The Plaintiff repeats and incorporates by reference each of the paragraphs above.

48. 19 U.S.C. § 1595a(c)(1)(A) provides that "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows . . . The merchandise shall be seized and forfeited if it . . . is stolen[.]"

49. Defendant Bataar Skull is a genuine Bataar fossil discovered in Mongolia at some time in 1946 or later.

50. Defendant Bataar Skull was introduced into the United States at some point after its discovery in Mongolia.

51. Defendant Bataar Skull was stolen under Mongolian law at the time of its introduction into the United States.

52. Introduction of the defendant Bataar Skull into the United States was contrary to law because it violated the Lacey Act, currently codified at 16 U.S.C. § 3371, et seq.  16 U.S.C. § 3372(a) states "[i]t is unlawful for any person . . . (2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce--

(A) any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law[.]" Because the Bataar Skull was imported to the United States in violation of Mongolian law, importation of the Bataar Skull violated 16 U.S.C. § 3372(a)(2)(A).

53.     Defendant Bataar Skull was introduced into to the United States contrary to law because its importation violated Mongolian law.

54.     Therefore, the defendant Bataar Skull is subject to forfeiture under 19 U.S.C. § 1595a(c)(1)(A), because there is probable cause to believe that it was introduced to the United States contrary to law, having been previously stolen.

## SECOND CLAIM FOR RELIEF

55.     The Plaintiff repeats and incorporates by reference each of the paragraphs above.

56.     19 U.S.C. § 1595a(c)(2)(A) provides that "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows . . . The merchandise may be seized and forfeited if . . . its importation or entry is subject to any restriction or prohibition which is imposed by law relating to health, safety, or conservation and the merchandise is not in compliance with the applicable rule, regulation, or statute . . . ."

57.     By the foregoing and other acts, there is probable cause to believe the defendant Bataar Skull constitutes merchandise which was introduced into the United States contrary to United States and Mongolian law, and is subject to a restriction or prohibition relating to conservation, as described above, and therefore it is subject to

forfeiture under 19 U.S.C. § 1595a(c)(2)(A).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant Bataar Skull in favor of the United States, and that the United States be authorized to dispose of the property in accordance with law.

## VERIFICATION

James A. Hasskamp, being duly sworn, deposes and says that he is a Special Agent with the United States Immigration and Customs Enforcement, Homeland Security Investigations office, and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof; and that the same is true to the best of his own knowledge, information, and belief.

The sources of deponent's information and the ground of his belief are conversations with other law enforcement officers and others, official records and files of Immigration and Customs Enforcement/Homeland Security Investigations, Department of Homeland Security, and the United States Government, and information obtained directly by deponent during an investigation of alleged violations of 16 U.S.C. § 3372 and 19 U.S.C. § 1595a.

James A. Hasskamp
Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

SUBSCRIBED AND SWORN TO before me this 31st day of July, 2017.

Sherrill A. Maddox
Notary Public in and for the State of Wyoming
My commission expires on:

15 August 2019

Respectfully submitted,

JOHN R. PARKER
UNITED STATES ATTORNEY

*s/ Joseph A. Magliolo*
JOSEPH A. MAGLIOLO
Assistant United States Attorney
Texas Bar No. 24074634
1100 Commerce Street, Third Floor
Dallas, TX 75242-1699
Telephone: 214-659-8600
joseph.magliolo@usdoj.gov